## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

**Frank Casado**, Special Agent of the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state under oath that:

1.  Your affiant is an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.  I am a Special Agent for Homeland Security Investigations ("HSI") San Juan, I was previously employed as a Special Agent with the U.S. Secret Service from July 2021 to March 2023. Prior to my federal law enforcement career, I was employed as a Police Officer with the New York City Police Department from October 2018 to July 2021. As part of my duties as a Special Agent with HSI, I investigate various crimes of federal law some of which relate to crimes committed at the borders of the United States. During my tenure as a Law Enforcement Officer, I have participated in various narcotics investigations. As part of my law enforcement experience, I have conducted physical surveillance, execution of search and arrest warrants, and in the seizure of narcotics. My investigative experience detailed herein, as well as my training, experience of other law enforcement officers who are participating in this investigation, serve as the basis for the conclusions set forth herein. I am currently assigned to the HSI San Juan Border Enforcement Security Task Force ("BEST").

3.  As a Special Agent my duties and responsibilities include conducting investigations of: alleged manufacturing, distributing or possession of controlled substances (21 U.S.C. § 841 (a)(1)); conspiracy to distribute a narcotic drug controlled substances into the United States (21 U.S.C.§ 846); importation of controlled substances (21 U.S.C. § 952(a)); smuggling of goods into the United States (18 U.S.C. § 545); failure to declare (31 U.S.C. § 5316), money laundering (18 U.S.C. § 1956), bulk cash smuggling (31 U.S.C. § 5332), alien smuggling (8 U.S.C. § 1324), entry without

Affidavit in Support of Criminal Complaint
Page 2

inspection (8 U.S.C. § 1325) and related offenses.

4.      During my law enforcement career, I have become familiar with the trafficking of illegal drugs and its proceeds as well as drug trafficking organizations operating in Puerto Rico. As part of my official duties, I have conducted arrests of persons engaged in illegal drug activities and its proceeds, executed search warrants of homes and property of persons engaged in drug trafficking and money laundering activities, and have participated in seizures of property and currency, which constituted proceeds of illegal drug trafficking activity. Moreover, I have interviewed persons involved in drug trafficking and money laundering and debriefed confidential sources and cooperating defendants regarding the habits and practices of people engaged in the illegal trafficking of drugs and the methods utilized to launder its proceeds. Through my training and experience, I have become familiar with the modus operandi of drug traffickers.

5.      Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. Because of the limited purpose of this affidavit, I have not recited each and every fact known to me as a result of this investigation. My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemists, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

6.      Based on my training, experience, and information from other investigators, I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics, and the collection of money proceeds of narcotics trafficking.

7.      I am also familiar with methods employed by large narcotics organizations to thwart detection by law enforcement, including the use of vague and coded language, debit calling cards, cellular telephone technology, counter surveillance, false or fictitious identities, encrypted mobile applications, and encoded communications.

8.      I have received instruction and training and have participated in investigations involving drug trafficking organizations and the laundering of drug proceeds. I have used a variety of investigative techniques, including: interviews of informants and cooperating witnesses; physical surveillance; controlled drug purchases; consensual monitoring and recording of telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; and search and arrest warrants that have led to seizures of narcotics, firearms, and other contraband.

## **PURPOSE OF AFFIDAVIT**

1.      This affidavit is being submitted in support of the Probable Cause Arrest of Juan Alexis TINEO-Martinez (Hereinafter referred to as TINEO-Martinez), Jesus Alberto BAYONA-Varela (Hereinafter referred to as "BAYONA-Varela"), and Luis Mario JIMENEZ-Alcantara (Hereinafter referred to as "JIMENEZ-Alcantara"). Your affiant submits that there is probable cause to believe that TINEO-Martinez, BAYONA-Varela, JIMENEZ-Alcantara and Raidy Alberto AMARO-Martinez did unlawfully, knowingly, and intentionally committed the following offenses:

- Conspiracy to Possess with Intent to Distribute Controlled Substances, a violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846;
- Conspiracy to Import Controlled Substances into the United States, a violation of Title 21, United States Code, Section 952(a); all in violation of Title 21, United States Code, Section 963; and
- Improper Entry by Alien, in violation of Title 8, United States Code 1325.

2.      The information contained within this affidavit is based on your affiant's personal knowledge, training and experience, as well as information provided to him by other law enforcement officers assisting with this investigation. Your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only the facts that he believes are necessary to establish the foundation for an order

Affidavit in Support of Criminal Complaint
Page 4

authorizing arrest of TINEO-Martinez, BAYONA-Varela, JIMENEZ-Alcantara and AMARO-Martinez.

## PROBABLE CAUSE

1.  On February 21st, 2025, Homeland Security Investigations (HSI) San Juan, Border Enforcement Security Task Force (BEST) was contacted by Customs and Border Protection (CBP), Office of Air and Marine Operations, San Juan Marine Unit (SJMU), regarding the intervention and arrest of four subjects who were attempting to introduce multiple bales of cocaine to the United States on a vessel (Yawl).

2.  On February 20, 2025, at approximately 2300 hours, the Caribbean Marine Operations Center (CAMOC) SJMU of a target of interest (TOI) 30 nautical miles (NM) north of Puerto Rico heading southeast. SJMU aboard CBP Coastal Interceptor Vessel (CIV M-834) responded to conduct an intercept of the TOI. The SJMU CIV, callsign M834, is a marked vessel equipped with blue lights, sirens, and a Whalen speaker. Approximately one mile out of the TOI, Multi-Role Enforcement Aircraft (MEA) Troy 702 interdicted the TOI traveling south at a high rate of speed heading 175 degrees north of Arecibo. At approximately 0056, the crew of M834 made visual contact of a homemade yola type vessel, lacking seats, a center console, or marine equipment. At this time the yola type vessel was approximately 12 nautical miles from the north coast of Puerto Rico.

3.  The TOI had no registration and was equipped with multiple fuel barrels connected to two (2) tiller engines. The TOI had characteristics of a hovering vessel as defined on 19 USC 1709 (d). The crew activated its navigational lights, blue lights and siren to stop the vessel. The TOI failed to heave and continued traveling south. The crew continued to hail the TOI to stop while Small Boat Interdiction Program (SBIP) was initiated. The crew landed two marine warning shots in the field view of the TOI operator. The TOI failed to heave to and continued navigating south. During the disabling phase of the evolution, the operator of the TOI rammed his vessel into M-834 which caused damages to the TOI and the ejection of the four subjects into the water.

4.      TFO Cruz, aboard M-834, boarded the TOI on an effort to seize several bales of suspected contraband, but the TOI capsized making the recovery of the bales was unsuccessful. The vessel capsized and the four abovementioned individuals were found approximately 12 nautical miles from the north coast of Puerto Rico.

5.      TINEO-Martinez, JIMENEZ-Alcantara and AMARO-Martinez are citizens of the Dominican Republic. BAYONA-Varela is a citizen of Colombian. None of the four individuals, had any documents nor authorization to enter or remain in the United States legally.

## SUBJECT INTERVIEWS

### Interview of BAYONA-Varela

1.      The following statements are not verbatim statements provided by BAYONA-Varela. BAYONA-Varela waived Miranda Warnings and stated he traveled to the Dominican Republic (DR) from Colombia on January 28, 2025, for a vacation trip. Once in the DR, BAYONA-Varela was approached by some individuals who hired BAYONA-Varela to a job he was not explained at the moment of the offer and was offered a payment of $10,000 USD. BAYONA-Varela stated that approximately on Wednesday February 19, 2025, he was driven to an unknown town approximately two hours away from where he was staying. Once at the location, BAYONA-Varela found out he was transporting "Drugs", and he would be departing on the vessel that same night. BAYONA-Varela stated he saw five bales of what he thought was cocaine.

2.      BAYONA-Varela was shown a photo of TINEO-Martinez, who he identified as the boat captain of the vessel. BAYONA-Varela was also shown a photograph of AMARO-Martinez, who he identified as the assistant of the boat captain of the vessel and the person who operated the GPS and the satellite phone to communicate with the transnational criminal organization (TCO) and would also operate the vessel at times.

3.      BAYONA-Varela stated once they arrived at U.S. customs waters and were interdicted by AMO SJMU, AMARO-Martinez was operating the vessel. BAYONA-

Affidavit in Support of Criminal Complaint
Page 6

Varela told AMARO-Martinez to stop the vessel since there was no point in attempting to flee law enforcement. AMARO-Martinez told BAYONA-Varela to be quiet and kept operating the vessel attempting to flee from AMO SJMU.

### Interview of AMARO-Martinez

1. The following statements are not verbatim statements provided by AMARO-Martinez. AMARO-Martinez waived Miranda Warnings and stated he was hired by FNU, LNU aka "JOVAN" to transport the cocaine. AMARO-Martinez was offered a payment of $75,000 USD to transport the cocaine to Puerto Rico and return to the Dominican Republic. Once AMARO-Martinez returned to the Dominican Republic, he was going to be compensated for the drug smuggling venture. AMARO-Martinez stated he knew JIMENEZ-Alcantara from before and knew he was going to get paid $20,000 USD to join the venture and assist them with anything needed along the way.

2. AMARO-Martinez stated he was dropped off at the launching site by aka JOVAN where he met with the other three subjects. AMARO-Martinez stated the cocaine bales were already loaded on the vessel once he arrived at the launching site and saw through the bales that what was packed inside the bales was bricks of cocaine. AMARO-Martinez stated BAYONA-Varela is a Colombian national, who was placed by the TCO in the smuggling venture to provide security for the cocaine being smuggled to Puerto Rico.

3. AMARO-Martinez stated he along with TINEO-Martinez were the boat captains of the vessel. AMARO-Martinez had the GPS with the coordinates and the satellite cell phone to communicate with the TCO. Once the vessel was 17 nautical miles out from Puerto Rico, AMARO-Martinez got in contact with the TCO, who provided him with coordinates of a landing site where they were supposed to drop off the cocaine and return to the Dominican Republic on the same vessel. Once the vessel was 5 nautical miles out from the coordinates provided, the TCO landing crew was going to flash a light to guide the vessel to land at the right location.

Affidavit in Support of Criminal Complaint
Page 7

4. AMARO-Martinez stated that a short distance after contacting the TCO, the vessel was interdicted by AMO SJMU. AMARO-Martinez was the vessel captain at the time of the interdiction and upon instructed to stop by AMO SJMU, he attempted to flee from AMO SJMU by accelerating the engine of the vessel. AMARO-Martinez stated they were intercepted by AMO SJMU and the boat capsized after colliding with the AMO SJMU vessel. AMARO-Martinez stated the satellite phone along with the GPS being used for the coordinates sank along with the vessel after capsizing.

Based upon the aforementioned, as stated above, your affiant respectfully requests that a complaint be authorized and that a warrant for arrest of TINEO-Martinez, BAYONA-Varela, JIMENEZ-Alcantara and AMARO-Martinez for violations fo the following offenses:

- Conspiracy to Possess with Intent to Distribute Controlled Substances, a violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846;
- Conspiracy to Import Controlled Substances into the United States, a violation of Title 21, United States Code, Section 952(a); all in violation of Title 21, United States Code, Section 963; and
- Improper Entry by Alien, in violation of Title 8, United States Code 1325.

FRANK CASADO
Digitally signed by FRANK CASADO
Date: 2025.02.21 18:18:17 -04'00'

Frank Casado
Special Agent
Homeland Security Investigations

Subscribed and sworn to ▮▮▮▮ pursuant to FRCP 4.1 at 5:18pm by telephone, this 21st of February, 2025, in San Juan, Puerto Rico.

MARSHAL D. MORGAN
United States Magistrate Judge
District of Puerto Rico